UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUCIAN MAYNARD, JR.,                                    Case No. 11-12221

            Plaintiff,                               Avern Cohn
v.                                                      United States District Judge

COMMISSIONER OF SOCIAL SECURITY,          Michael Hluchaniuk
                                          United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 15)**

I. **PROCEDURAL HISTORY**

    A.    <u>Proceedings in this Court</u>

On May 20, 2011, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Avern Cohn

referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of disability,

disability insurance, and supplemental security income benefits. (Dkt. 2). This

matter is before the Court on cross-motions for summary judgment. (Dkt. 10, 15).

    B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on April 26, 2006, alleging that he became

unable to work on November 15, 2005.  (Dkt. 6-5, Pg ID 117).  The claim was

initially disapproved by the Commissioner on July 18, 2006.  (Dkt. 6-3, Pg ID 71).

Plaintiff requested a hearing and on January 14, 2009, plaintiff appeared with

counsel before Administrative Law Judge (ALJ) Patricia E. Hartman, who

considered the case *de novo*.  In a decision dated February 20, 2009, the ALJ

found that plaintiff was not disabled.  (Dkt. 6-2, Pg ID 35-44).  Plaintiff requested

a review of this decision on March 11, 2009.  (Dkt. 6-2, Pg ID 33-24).  The ALJ's

decision became the final decision of the Commissioner when, after the review of

additional exhibits[1] (Dkt. 6-2, Pg ID 28-29), the Appeals Council, on March 24,

2011, denied plaintiff's request for review.  (Dkt. 6-2, Pg ID 24-27); *Wilson v.

Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, that the findings of the Commissioner be

**REVERSED**, and that this matter be **REMANDED** for further proceedings.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 41 years of age at the time of the most recent administrative hearing.  (Dkt. 6-2, Pg ID 43).  Plaintiff's relevant work history included approximately 16 years as an industrial worker and a hi-lo operator.  (Dkt. 6-6, Pg ID 137).  In denying plaintiff's claims, defendant Commissioner considered a back injury and high blood pressure as possible bases of disability.  (Dkt. 6-6, Pg ID 136).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since November 15, 2005.  (Dkt. 6-2, Pg ID 40).  At step two, the ALJ found that plaintiff's degenerative disc disease was "severe" within the meaning of the second sequential step.  *Id*.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 6-2, Pg ID 41).  At step four, the ALJ found plaintiff unable to perform any past relevant work.  (Dkt. 6-2, Pg ID 42).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  (Dkt.6-2, Pg ID 43).

### B.   Plaintiff's Claims of Error

Plaintiff first argues that the ALJ improperly failed to give controlling

weight to the opinions of his treating physicians and failed to give sufficiently good reasons for doing so.  For example, while the ALJ indicated that Drs. Graziano and Silverman were focused solely on plaintiff's ability to return to his former job, each offered a far broader view of the situation.  Plaintiff points out that Dr. Graziano opined that plaintiff was "totally disabled": "Mr. Maynard is totally disabled due to his spinal condition and I do not feel that he will return to gainful employment." (Tr. 307).  According to plaintiff, this conclusion takes into account far more than plaintiff's ability to work at his last job; instead, it deals with his ability to work, period.  Similarly, Dr. Silverman rendered a diagnosis of chronic intractable back pain and lower extremity pain (Tr. 310), clearly not a diagnosis suggestive of an ability to nonetheless engage in competitive employment.  Consequently, while he did note that plaintiff could not return to his prior position, Dr. Silverman further stated, "I would, therefore, consider this patient disabled."  (Tr. 310).  Plaintiff contends that these opinions are far broader than the ALJ recognized.

Plaintiff also contends that the ALJ erred by failing to fully credit his testimony, which is supported by the medical evidence of record.  Thus, in formulating the RFC, the ALJ relied on the incorrect hypothetical posed to the vocational expert.  Finally, plaintiff argues, in the alternative, that if the Court concludes that the ALJ's decision is supported by substantial evidence, the Court

should still remand under sentence six to permit the introduction of the evidence rebutting the vocational expert testimony that was provided to the appeals council.

C.    The Commissioner's Motion for Summary Judgment

According to the Commissioner, the ALJ's evaluation of the sparse evidence related to plaintiff's back impairment was reasonable and supported by substantial evidence.  The Commissioner contends that the ALJ properly showed that her conclusion – that plaintiff's back condition had not worsened since his 2004 surgery (after which he returned to medium level work) and that he could do at least a reduced range of sedentary work – was supported by the facts.

The ALJ first considered the evidence from primary care physician Dr. Okey.  (Tr. 17, 19).  She noted that in March 2006, Dr. Okey indicated that plaintiff probably could not work a job where he was standing, and thus that he would either have to be "medically retired" or quit his current job.  (Tr. 235).  She also noted that in 2007, Dr. Okey indicated that plaintiff had "chronic back deg[enerative] disc disease," could not "go back to [his] job," and was "permanently disabled from doing physical work."  (Tr. 17, 19, 305).  The Commissioner urges the Court to reject plaintiff's position that, essentially, the use of the word "disabled" is determinative, regardless of context or other illuminating evidence for several reasons.  First, the Commissioner contends that accepting plaintiff's premise would require an ALJ to examine facts in a vacuum, contrary to

the ALJ's obligation to make a decision based on all the relevant facts.  Second, application of the comprehensive procedure required by the regulations demonstrates that the other facts belie plaintiff's militant view of Dr. Okey's opinions.  For example, there is no disputing that in 2006, Dr. Okey opined only that plaintiff could not return to his past job (Tr. 235).  The Commissioner points out that while plaintiff relies on Dr. Okey records that "indicated that Plaintiff could not work," plaintiff fails to acknowledge that related documents from the same time show that Dr. Okey also specifically explained that he had placed restrictions on plaintiff consistent with a reduced range of sedentary work (and for only one month, at that), and that he determined plaintiff could not return to work only because plaintiff had informed him that no jobs existed at the auto plant that satisfied the restriction.  (Tr. 215).

Similarly, in 2007, Dr. Okey indicated that plaintiff could not "go back to [his] job," and was "permanently disabled from doing physical work."  (Tr. 17, 19, 305).  According to the Commissioner, there is no good reason not to read these statements in tandem, and there is nothing about these statements compelling the conclusion that Dr. Okey meant that plaintiff could do no work at all.  Third, the authorities are united behind the principle that a bald declaration of disability by a treating physician is not entitled to any special deference.  Such an opinion not only invades the ALJ's province, it also does not explain to what extent a person

can perform specific work-related functions, which is critical information in assessing the true nature of a person's physical abilities. If plaintiff insists on focusing only on the use of the word "disabled," then the Commissioner contends that Dr. Okey's opinion lacked the substance and detail that the regulations require from treating sources.  Here, Dr. Okey did not offer any information warranting deference, and indeed, failed to satisfy the regulatory call for specificity and clarity in opinions.  In fact, the ALJ's analysis suggests that Dr. Okey did not explain how his findings led him to such an extreme conclusion because he could not.  As the ALJ explained, Dr. Okey cited only to a diagnosis of chronic degenerative disc disease in support of his opinion (Tr. 17), but the diagnostic imaging evidence showed that plaintiff had experienced little to no degenerative change since his back surgery in 2004 (after which he returned to heavy labor). (Tr. 17, 199-201).  Indeed, even Dr. Okey agreed in April 2006 that the diagnostic imaging "doesn't show anything terrible." (Tr. 234).  According to the Commissioner, Dr. Okey gave no other explanation or justification; thus, the ALJ would have been well-justified in finding that an opinion of disability by Dr. Okey could not be credited.

According to the Commissioner, there was, of course,  no need for the ALJ to interpret Dr. Okey's opinion in this way in the first instance.  Rather, the ALJ reasonably understood Dr. Okey to preclude plaintiff from his prior medium level

work, and in fact, the ALJ's RFC determination is consistent with the temporary

restrictions Dr. Okey gave in March 2006 (and with the opinion of examiner Dr.

Lele in May 2006). (Tr. 18, 215, 261-65). The ALJ's conclusion that Dr. Okey's

opinions were not inconsistent with her RFC determination was, therefore,

reasonable.

The Commissioner maintains that the analysis regarding Drs. Graziano and

Silverman is nearly identical. As the ALJ noted, in March 2006, Dr. Graziano

clearly explained his thinking when he wrote that plaintiff "currently has been

disabled by [his] pain and unable to work on the Ford assembly line," which he

stated "requires lifting the heavy objects up" and that "a large aggravating factor

regarding his pain is the nature of his work, and we explained to him today at

length that likely going on to have reasonable pain control would require that he

find another line of work. A disability form is filled out for him today to facilitate

this." (Tr. 195). According to the Commissioner, plaintiff cannot colorably argue

that this was anything other than an opinion that plaintiff could not return to his

past work, despite the "sloppy" use of the words "disabled" and "disability." The

Commissioner contends that Dr. Graziano's language plainly shows that Dr.

Graziano's understanding of these terms is not consistent with SSA policy and that

he does not know that these terms carry specific regulatory definitions. The

Commissioner contends that these facts reasonably inform Dr. Graziano's 2007

opinion that plaintiff was "totally disabled due to his spine condition" and that plaintiff would not "return to gainful employment."  (Tr. 307).

According to the Commissioner, the ALJ fails to explain why the ALJ should have given it more weight than Dr. Graziano's 2006 opinion.  The 2006 opinion is well-supported by the clinical evidence; as the ALJ noted, the diagnostic imaging was mild and showed no severe post-surgical change and Dr. Graziano agreed in 2006 that the diagnostic imaging did not explain plaintiff's symptoms.  (Tr. 195).  Moreover, Dr. Graziano's physical examinations of plaintiff were always normal.  (Tr. 195-96).  By contrast, the Commissioner says that there are no treatment notes supporting the 2007 opinion – rather, the record indicates that Dr. Graziano last examined plaintiff on the day that he gave the 2006 opinion, and there was no intervening visit as of the time of the 2007 opinion.  In addition, as the ALJ mentioned, there is no other evidence in the record to explain Dr. Graziano's purported change of opinion.  (Tr. 19). According to the Commissioner, the ALJ correctly noted that nothing showed any deterioration or worsening in plaintiff's condition from the date of Dr. Graziano's 2006 opinion.  (Tr. 19).  Thus, the Commissioner argues that nothing compels the interpretation of Dr. Graziano's 2007 opinion in the way that plaintiff demands, and plaintiff has not shown that the ALJ's reading of the entirety of Dr. Graziano's opinions was erroneous.

Finally, the Commissioner also maintains that the ALJ accurately set forth that examining physician Dr. Silverman opined that plaintiff "more likely than not . . . will not return to his former job" and indicated that he "consider[ed] [Plaintiff] disabled." (Tr. 317). Again, the Commissioner asserts that plaintiff's position that the ALJ should have focused on only part of this opinion should be rejected; rather, the Court should concluded that the ALJ was obligated to consider the entire opinion, and she was not unreasonable in interpreting it to relate only to plaintiff's ability to do his past medium level work.

According to the Commissioner, plaintiff's argument about the VE's testimony is simply an attack on the ALJ's credibility determination in an alternate form. Plaintiff has not shown that the ALJ erred in her evaluation of Plaintiff's credibility. And, the ALJ's decision showed that the objective medical and medical opinion evidence contradicted plaintiff's claim that he was disabled.

Finally, the Commissioner contends that plaintiff has failed to carry his burden of showing that a remand under sentence six is warranted. First, this evidence is plainly not new because, while it dates from August 2009, plaintiff has not shown that the evidence was unavailable prior to then. (Tr. 346). Plaintiff has also not given any reason why he could not have obtained this evidence after the hearing but before the ALJ issued her decision. The Commissioner also points out that plaintiff did not bother to cross-examine the VE, nor did he ask the ALJ to

hold the record open for the submission of additional evidence, suggesting that this effort came only as a "tardy afterthought."

The Commissioner also asserts that plaintiff has not shown good cause for having failed to have submitted the evidence earlier. There has been no explanation of why plaintiff or his counsel did not obtain this contrary evidence prior to the issuance of the decision or at least ask for time to submit it before the decision. Thus, the Commissioner contends that no good cause has been shown here. And, the Commissioner also argues that plaintiff has not shown that the evidence is material because the analysis of the VE's testimony is flawed and the counselor relies on the wrong standard for determining whether there are a significant number of jobs exist within the national economy.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is

not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);
*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is
appropriate where an ALJ finds contradictions among medical reports, claimant's
testimony, and other evidence.").  "However, the ALJ is not free to make
credibility determinations based solely upon an 'intangible or intuitive notion
about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec.
Rul. 96-7p, 1996 WL 374186, *4.

 If supported by substantial evidence, the Commissioner's findings of fact
are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the
Commissioner's decision merely because it disagrees or because "there exists in
the record substantial evidence to support a different conclusion." *McClanahan v.*
*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800
F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a
scintilla of evidence but less than a preponderance; it is such relevant evidence as
a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486
F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard
presupposes that there is a 'zone of choice' within which the Commissioner may
proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,
1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

 The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

   B.   Governing Law

   The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial

gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

Report and Recommendation
Cross-Motions for Summary Judgment
*Maynard v. Comm'r*; Case No. 11-12221

significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   Analysis and Conclusions

As to the ALJ's treatment of the treating physician opinions, the undersigned concludes that the ALJ gave them proper weight because the opinions did not go to the issue at hand - whether plaintiff could work a sedentary position. Rather, all of the treating physician opinions focused on plaintiff's past work, lifting restrictions, and how plaintiff was unable to perform manual labor. None of the treating physicians offered any definitive opinion regarding plaintiff's functional limitations as to any other type of work. Thus, this is not a situation where the ALJ failed to give the opinions of treating physicians controlling weight or failed to give sufficiently good reasons for not giving such opinions controlling weight. The undersigned is also not persuaded by plaintiff's argument that the ALJ was required to accept the statements from treating physicians that plaintiff

was "disabled" at face value. Rather, the ALJ properly evaluated these statements in context and concluded that the opinions generally meant that plaintiff was disabled from manual labor and his past work. It is well-established that treating physician opinions are entitled to special significance and may be entitled to controlling weight insofar as they concern "the nature and severity of the individual's impairment(s)." SSR 96-5p; 1996 WL 473183, at *4-5. However, the opinions expressed in a medical source statement must not be equated with the administrative finding known as the residual functional capacity assessment. *Id.* In other words, if a physician opines that a claimant could perform only sedentary work, "his treating source states would have no bearing on the legitimacy of that opinion"; but it obviously does bear on the legitimacy of an opinion that a claimant cannot, for example, "lift more than five pounds occasionally." *Maynard v. Astrue*, 2008 WL 918536, *12 n. 3 (M.D. Tenn. 2008). Here, plaintiff asks the Court to expand the scope of "treating physician rule," which it will not do.

However, the undersigned is troubled by the ALJ's failure to recognize that one of the "state agency medical opinions" is not a medical opinion at all, but rather, was the opinion of a disability examiner named Dale Beukema, a non-physician, acting pursuant to 20 C.F.R. §§ 404.906(b)(2). (Tr. 47, 274). This regulation provides streamlined procedures as an experiment, in which State Agency disability examiners may decide cases without documenting medical

opinions from State Agency medical consultants.  The "single decisionmaker model" was an experimental modification of the disability determination process that happens to have been used in Michigan.  *See Leverette v. Comm'r*, 2011 WL 4062380 (E.D. Mich. 2011).  This experiment eliminated the reconsideration level of review and allowed claims to go straight from initial denial to ALJ hearing.  *Id*. Most significantly, it allowed the state agency employee (the single decisionmaker) to render the initial denial of benefits without documenting medical opinions from the state agency medical consultants.  *Id*., citing 20 C.F.R. §§ 404.906(b)(2), 416.1406(b)(2).  The Programs Operations Manual System (POMS) requires it to "be clear to the appeal-level adjudicator when the SSA–4734–BK [the PRFC assessment form] was completed by an SDM because SDM-completed forms are not opinion evidence at the appeal levels."  POMS DI § 24510.05.  Here, the form was clear that Mr. Beukema was not a physician, but the ALJ clearly believed that he was a physician, given the statements in the decision.

However, in the equivalency evaluation, the ALJ gave Mr. Buekema's opinion little weight, finding plaintiff to be more restricted than he opined in the PRFC.  The question is whether the ALJ's error in not recognizing that Mr. Sullivan was not a physician was harmless.  As set forth in *Stratton v. Astrue*, — F.Supp.2d —; 2012 WL 1852084, *11-12 (D. N.H. 2012), SSR 96-6p describes

the process by which ALJs are to make step-three determinations:

> The administrative law judge ... is responsible for deciding the ultimate legal question whether a listing is met or equaled. As trier of the facts, an administrative law judge ... is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments. However, *longstanding policy requires that the judgment of a physician* (or psychologist) designated by the Commissioner *on the issue of equivalence on the evidence* before the administrative law judge ... *must be received into the record as expert opinion evidence and given appropriate weight*.

1996 WL 374180, at *3 (emphasis added); *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)); *Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. 2011) (warning that an ALJ who makes a step-three equivalence determination without expert-opinion evidence runs the risk of impermissibly playing doctor).

The *Stratton* court further explains that SSR 96-6p treats equivalence determinations differently from determinations as to whether an impairment meets

a listing, requiring expert evidence for the former, but not the latter.  *Id.* at. *12;

citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. 2008) ("The basic

principle behind SSR 96-6p is that while an ALJ is capable of reviewing records

to determine whether a claimant's ailments meet the Listings, expert assistance is

crucial to an ALJ's determination of whether a claimant's ailments are equivalent

to the Listings.") (citation and quotation marks omitted).  This expert opinion

requirement can be satisfied by a signature on the Disability Determination

Transmittal Form.  *Stratton*, at *12, citing SSR 96-6p, 1996 WL 374180, at *3

(The expert-opinion evidence required by SSR 96–6p can take many forms,

including "[t]he signature of a State agency medical ... consultant on an SSA-831-

U5 (Disability Determination and Transmittal Form).");  *Field v. Barnhart*, 2006

WL 549305, at *3 (D. Me. 2006) ("The Record contains a Disability

Determination and Transmittal Form signed by Iver C. Nielson, M.D ....

discharging the commissioner's basic duty to obtain medical-expert advice

concerning the Listings question.").  In this case, there is no such signature on the

Disability Determination and Transmittal Form.  (Tr. 47).[2]  The great weight of

---

[2]  As plaintiff points out, the DDT was only signed off by the physician who performed the evaluation of plaintiff's mental impairments, but no physician signed off on the physical impairments and limitations noted by the nonmedical disability examiner.

authority[3] holds that a record lacking any medical advisor opinion on equivalency

_____

[3] In *Stratton*, the court noted that a decision from Maine "stands alone" in determination that 20 C.F.R. § 404.906(b) "altered the longstanding policy that an ALJ is required to seek a medical opinion on the issue of equivalence." *See Goupil v. Barnhart*, 2003 WL 22466164, at *2 n. 3 (D. Me. 2003). While the government has argued in other cases that courts in this district have concluded that the ALJ need not obtain expert opinion evidence in cases involving an SDM, *see Gallagher v. Comm'r*, 2011 WL 3841632 (E.D. Mich. 2011) and *Timm v. Comm'r*, 2011 WL 846059 (E.D. Mich. 2011), the undersigned does not find these cases persuasive. In both cases, the court concluded that because the regulations permitted an SDM to make disability determination without a medical consultant that the ALJ is, therefore, also permitted to do so where the "single decisionmaker" model is in use. Nothing about the single decisionmaker model changes the ALJ's obligations in the equivalency analysis. *See Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)). Moreover, *Timm* and *Gallagher* do not address: (1) the fact that SDM opinion evidence is not considered an acceptable medical source; and (2) the memorandum issued by Acting Chief Administrative Law Judge on September 14, 2010 (10-1691), which mandates the following in SDM cases:

> Agency policy is that findings made by SDMs are not opinion evidence that Administrative Law Judges (ALJs) or Attorney Adjudicator (AAs) should consider and address in their decisions. See, for example, POMS DI 24510.050C, which states that SDM-completed forms are not opinion evidence at the appeal levels. SDM finding, are not "medical opinion" evidence since they do not come from medical sources. However, agency policy is that they are also not the opinions of non-medical sources as described in SSR 06-3p.

> Therefore, ALJs and AAs must not consider SDM RFC assessment forms and other findings as opinion evidence and must not evaluate them in their decisions. ALJs and, by extension, AAs must continue to consider findings made by State agency MCs and PCs as opinion evidence and weigh that evidence together with the other evidence in the record when they make their decisions. 20 CFR 404.1527(f) and 416.927(f) and Social Security Ruling 96-6p.

(Emphasis in original). Based on the foregoing, the undersigned cannot conclude that the ALJ's obligation to consult a medical expert in making an equivalency determination is any different in a case where the SDM model is used. While the SDM is not required to obtain a medical opinion in cases involving physical impairment, as noted in *Timm* and *Gallagher*, nothing appears to have modified the ALJ's obligations and it makes little sense to conclude that the ALJ is relieved from obtaining an expert medical opinion in SDM cases when the ALJ is not permitted to rely on the SDM RFC as any type of evidence. Thus, the undersigned's analysis does not alter the SDM

requires a remand.  *Stratton*, at *13 (collecting cases); *see e.g. Caine v. Astrue*, 2010 WL 2102826, at *8 (W.D. Wash. 2010) (directing ALJ to obtain expert-opinion evidence on equivalence where none was in the record); *Wadsworth v. Astrue*, WL 2857326, at *7 (S.D. Ind. 2008) (holding that where record included no expert-opinion evidence on equivalence, "[t]he ALJ erred in not seeking the opinion of a medical advisor as to whether Mr. Wadsworth's impairments equaled a listing").

While there is support for the proposition that such an error can be harmless and the undersigned is not necessarily convinced that plaintiff can show his physical impairments satisfy the equivalency requirements, "[n]either the ALJ nor this court possesses the requisite medical expertise to determine if [plaintiff]'s impairments ... in combination equal one of the Commissioner's listings." *Freeman v. Astrue*, 2012 WL 384838, at *4 (E.D. Wash. 2012).  In this case, the error is especially troubling in light of the ALJ's observation that a treating physician had concluded he could work a sedentary job in 2005 and the ALJ's conclusion that "the medical evidence [of ] record does not indicate that the claimant's condition has deteriorated since February 20, 2007, when the claimant

---

model, which leaves the SDM discretion as to whether a medical expert is consulted as to physical impairments. Rather, the undersigned's analysis leaves intact the requirements imposed on an ALJ in making an equivalency determination, which does not otherwise appear to be modified by the SDM model.

could not return to physical work or May 23, 2006, when it was determined that the claimant could work with restrictions." (Tr. 19). The ALJ's decision was issued on February 20, 2009, but there was no expert medical opinion regarding whether plaintiff's physical or functional limitations had changed in the two years since his treating physician opined that he could not return to "physical work." The problem is twofold: no treating physician offered any opinion regarding plaintiff's functional ability to work other than his previous job (nor were they asked to) and there is no state agency medical opinion on this issue. For these reasons, the undersigned concludes that this matter must be remanded so that the ALJ can obtain the opinion of a qualified medical advisor on the issue of equivalence. Given these conclusions, plaintiff's credibility will necessarily require re-evaluation. And, while the ALJ may not be required in this case to recontact the treating physicians pursuant to Social Security Ruling 96-5p, given that a remand is necessary as discussed above, the undersigned also suggests that the ALJ should consider whether recontacting plaintiff's treating physicians is necessary and appropriate under the circumstances. *See Ferguson v. Comm'r*, 628 F.3d 269, 273 (6th Cir. 2010). Finally, plaintiff's request for remand under sentence six need not be considered, given the conclusion that a sentence four remand is appropriate.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

Report and Recommendation
Cross-Motions for Summary Judgment
*Maynard v. Comm'r*; Case No. 11-12221

The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: September 11, 2012       s/Michael Hluchaniuk
                                    Michael Hluchaniuk
                                    United States Magistrate Judge

## CERTIFICATE OF SERVICE

     I certify that on September 11, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Diane M. Kwitoski, Judith E. Levy, AUSA, and the Commissioner of Social Security.

                                    s/Darlene Chubb
                                    Judicial Assistant
                                    (810) 341-7850
                                    darlene_chubb@mied.uscourts.gov