UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUCIAN MAYNARD,

                Plaintiff,                Case No: 11-12221

vs.                                        HON. AVERN COHN

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____/

**MEMORANDUM AND ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (Doc. 16)
AND
GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 10)
AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 15)
AND
REMANDING FOR FURTHER PROCEEDINGS**

**I.  INTRODUCTION**

This is a Social Security case.  Plaintiff Lucian Maynard, Jr. (Maynard) appeals from the final decision of the Commissioner of Social Security (Commissioner) denying his application for Social Security disability benefits.  Maynard claims disability since November 15, 2005, due to a back injury.

The parties filed cross motions for summary judgment.  The motions were referred to a magistrate judge (MJ) for a report and recommendation (MJRR).  The MJ recommends that Maynard's motion for summary judgment be granted and that the Commissioner's motion for summary judgment be denied.  The Commissioner filed timely objections to the MJRR (Doc. 17) and Maynard filed a response (Doc. 20).  For the reasons that follow, the

Court will adopt the MJRR, deny the Commissioner's motion for summary judgment (Doc. 15), grant Maynard's motion for summary judgment (Doc. 10), and remand to the ALJ for further proceedings consistent with this opinion.

## II. BACKGROUND

### A.

As the parties have not objected to the MJ's recitation of the procedural history and administrative record, the Court adopts that portion of the MJRR as if fully set forth herein. See (Doc. 16). The Court has independently reviewed the administrative record and a more detailed discussion of the evidence related to Maynard's disability claim follows.

Maynard applied for disability benefits on April 26, 2006 and alleged a November 15, 2005 onset of disability. The Social Security Administration (SSA) denied Maynard's claim. A hearing was held before an ALJ on January 14, 2009. Maynard and a vocational expert (VE) testified at the hearing.

### 1. Maynard's Testimony

Maynard testified as follows. He is a forty-year-old male who completed the twelfth grade. He has never had any vocational training. From 1990 until 1998, he worked full-time for Laimbeer Packaging (Laimbeer) as a hi-lo operator. From 1998 until 2006, he worked full-time as an assembly line worker in the body shop at Ford Motor Company (Ford).

Beginning in early adulthood, he began suffering from back and leg pain. In 1995, he underwent surgery to have a herniated disc removed in his back. In 2001, he was in an automobile accident, which exacerbated his injuries. He had a second surgery after the accident.

Due to his injuries, Ford restricted Maynard's job duties in late 2005. In November of 2005, Ford required him to be evaluated by a doctor. The doctor found him to be disabled. Maynard described his physical disabilities that prevent him from working as "[b]ack pain, leg pain and I can't do any repetitive standing. I just can't get comfortable either way; sitting, standing, I have to keep moving around." On a scale of one to ten, he rated his daily pain as a seven. At its worst, which occurs once a week, he rated the pain at a ten. Lying makes the pain bearable and standing or walking make it worse. He takes four to five painkillers a day (Darvocet and Tramadol). He also takes medication to prevent panic attacks.

He can only walk thirty to forty feet before he needs to rest. He can sit or stand for fifteen to twenty minutes before he has to move around. He cannot lift more than five pounds and his ability to bend is limited. His back pain affects his sleeping: "I just can't sleep because of my back hurting. I move from the chair to the bed and to the couch. Just [sic] I can't get comfortable." He also has trouble putting on his sox and shoes. He is able to mow the lawn using a riding lawn mower, and he fixes meals ("microwave stuff") for his two children, an eighteen-year-old and a nine-year-old. Sometimes, he attends his children's school activities, but he has trouble sitting at these events.

He does not leave the home to visit friends; they visit him. He visits his parents at their home in West Virginia once a year. He visits a doctor every three months and gets steroid shots for his back pain. He had physical therapy, which he says did not help. In addition to the two previous surgeries, doctors have recommended another surgery to put an electric stimulator in his spinal cord.

**2. The VE's Testimony**

A vocational expert (VE) also testified at the hearing after reviewing Maynard's file and listening to his testimony. Her testimony follows.

Based on Maynard's testimony and prior work experience, the VE classified Maynard as "an assembler and a production operator." She opined that he is in a "medium exertional category."

In response to a hypothetical from the ALJ, which asked whether someone limited to simple, unskilled, light work would be able to perform Maynard's past work, the VE answered no. The ALJ then asked the VE to assume that the hypothetical person had Maynard's vocational profile relative to age, education, and work history, with no limitations. The VE replied that there would be a number of jobs in the regional or national economy that such person could perform. As a follow up, the ALJ asked the VE to assume that Maynard's testimony relative to his limitations was credible, to which the VE replied that Maynard would not be able to perform any of the jobs identified.

### 3. Relevant Medical History of Record

The record before the ALJ also contained Maynard's medical records. The medical evidence relevant to the ALJ's decision follows.

Maynard treated with Dr. Pir. Lamont Okey for over fifteen years. Based on his continued treatment of Maynard, Dr. Okey opined that Maynard has "chronic back deg. disc disease." He recognized that Maynard "had multiple surgeries, injections, PT, and pain meds." Further, Dr. Okey opined that Maynard's disability is permanent and that he is "permanently disabled from doing physical work."

In May of 2006, a Ford doctor examined Maynard and determined that he could not lift more than five pounds. The doctor also opined that Maynard was limited in standing,

twisting, bending, climbing, standing, and sitting. Maynard returned to work under these limitations.

Maynard also treated at the University of Michigan hospital. Maynard treated with Dr. Gregory P. Graziano at U of M's Orthopedic Spine Clinic since 2003, following his 2001 automobile accident. In a letter dated June 11, 2007, Dr. Graziano explained Maynard's past treatment: Maynard "was diagnosed with L4-S1 degenerative disc disease and it was recommended that he undergo L4-S1 posterior spinal fusion. Subsequently, on December 11, 2003, Mr. Maynard underwent L4-S1 posterior spinal fusion with iliac crest bone grafting." He was again examined on June 1, 2007, and it was recommended that Maynard continue working with the Pain Clinic. Dr. Graziano opined that Maynard "is totally disabled due to his spinal condition and I do not feel that he will return to gainful employment."

On November 24, 2005, U of M doctors Jennifer Weaver and Stephanie Rufener treated Maynard after he fell in his bathroom. The clinical report notes that, although the fall did not cause serious injury, Maynard had "several wedge deformities in the mid thoracic spine, age-indeterminate."

On March 24, 2006, U of M doctors Sameer Ansari and Diana Gomez-Hassan performed a back operation on Maynard. The doctors opined that Maynard had "degenerative disc disease at L5-S1 with minimal left paracentral diffuse disc bulge at L4-L5."

Maynard's records reflect that he treated with Dr. Steven B. Silverman at the Michigan Pain Institute at Chelsea Community Hospital. On three separate occasions in 2007 and 2008, Dr. Silverman performed a "Left C2, C3, C4, C5 cervical facet joint

rhizolysis" operation to remedy Maynard's chronic head, neck, and shoulder pain. Maynard was diagnosed with cervicalgia and cervicogenic headache after each operation.

In a letter dated May 9, 2007, Dr. Silverman stated that, "It is my opinion that it is more likely than not, that this patient [Maynard] will not return to his former job. . . I would, therefore, consider this patient disabled." This opinion came after noting Maynard's "persistent pain both in the back as well as intermittent pain into the lower extremity post fusion."

Finally, the medical record contains physical residual functional capacity ("RFC") assessments completed by Dale Beukema, a disability examiner. In these assessments, Beukema stated that, "[b]ased on medical evidence, [Maynard's] statements appear only partially credible." Nonetheless, Beukema acknowledged that Maynard had occasional limitations in climbing, balancing, stooping, kneeling, crouching, and crawling.

**B.**

The MJRR summarizes the ALJ's February 20, 2009 decision denying benefits:

> [Maynard] was 41 years of age at the time of the most recent administrative hearing. [Maynard]'s relevant work history included approximately 16 years as an industrial worker and a hi-lo operator. In denying [Maynard]'s claims, defendant Commissioner considered a back injury and high blood pressure as possible bases of disability.
> The ALJ applied the five-step disability analysis to [Maynard]'s claim and found at step one that [Maynard] had not engaged in substantial gainful activity since November 15, 2005. At step two, the ALJ found that [Maynard]'s degenerative disc disease was "severe" within the meaning of the second sequential step. At step three, the ALJ found no evidence that [Maynard]'s combination of impairments met or equaled one of the listings in the regulations. At step four, the ALJ found [Maynard] unable to perform any past relevant work. At step five, the ALJ denied benefits because plaintiff could perform a significant number of jobs available in the national

economy.

(Doc. 16) (internal citations to record omitted).

The ALJ reasoned that Maynard was unable to return to Ford, or work that involved the manual labor of his past work, but he was still able to perform some types of work. The ALJ found that Maynard's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with [Beukema's RFC]." The ALJ determined that Maynard's condition has not worsened since he returned to work with restrictions in May of 2006. In addition, the ALJ found that, "[t]here is no evidence in the medical record that any treating physician has found [Maynard] to have more severe restrictions than those contained in the RFC adopted."

## C.

The Appeals Council (AC) declined to review the ALJ's decision. Maynard then brought this action for judicial review, arguing that the ALJ's decision was not supported by substantial evidence because 1) the ALJ failed to give controlling weight to the opinions of his treating physicians; 2) the ALJ erred by failing to fully credit Maynard's testimony, which is supported by the medical evidence of record, leading to an incorrect hypothetical question posed to the VE. Maynard alternatively argued that, should the Court find the ALJ's decision to be supported by substantial evidence, a sentence six remand is necessary to permit rebuttal evidence of the VE's testimony.

## III. THE MJRR

The MJ agreed that the ALJ correctly considered the opinions of Maynard's treating physicians and "gave them proper weight." However, the MJ held that there was no expert medical opinion on the issue of whether Maynard's ailments met a listed impairment, which

is required to make a Step Three analysis. As explained in the MJRR, the State of Michigan has adopted the "single decisionmaker model" (SDM) as an experimental program to allow disability examiners to make initial disability determinations without obtaining the opinion of a medical consultant. This is to allow claims to go straight from initial denial to the ALJ hearing. The MJ reasoned that, even under an SDM, "[t]he great weight of authority holds that a record lacking any medical advisor opinion on equivalency requires a remand" (Doc. 16) (citations omitted). The MJ further stated, "The problem is twofold: no treating physician offered any opinion regarding [Maynard]'s functional ability to work other than his previous job (nor were they asked to) and there is no state agency medical opinion on this issue." (Id.).

The Commissioner now objects to the MJRR on the issue that was never briefed by the parties. The Commissioner says an expert opinion on the issue of medical equivalence is not mandatory for cases decided using the SDM. Instead, the Commissioner says consultation with a medical expert is only necessary in appropriate circumstances, this not being one of those circumstances. In addition, the Commissioner says that it was Maynard's burden to prove an impairment or combination of impairments; thus, if the ALJ committed any error, it was harmless.

## IV. STANDARD OF REVIEW

### A. Objections to MJRR

A district court must conduct a de novo review of the parts of a MJRR to which a party objects. 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge

with instructions." Id. The requirement that district judges with life tenure conduct a de novo review and be the final arbiters of matters referred to a magistrate judge is jurisdictional. United States v. Shami, 754 F.2d 670, 672 (6th Cir. 1985); Flournoy v. Marshall, 842 F.2d 875, 878 (6th Cir. 1987).

### B. Commissioner's Disability Determination

Judicial review of a Social Security disability benefits application is limited to determining whether "the commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997). A reviewing court may not resolve conflicts in the evidence or decide questions of credibility. Brainard v. Sec'y of HHS, 889 F.2d 679, 681 (6th Cir. 1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). It is "more than a scintilla but less than a preponderance." Consol. Edison Co. v. NLRB, 305 U.S. 197, 399 (1938). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Casey v. Sec'y of HHS, 987 F.2d 1230, 1233 (6thCir. 1993); Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009). The substantial evidence standard is deferential and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference with the courts." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).

When determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must take into consideration the entire record as a whole.

9

Futernick v. Richardson, 484 F.2d 647, 649 (6th Cir. 1973). If the Appeals Council declines to review the ALJ's decision, the court's review is limited to the record and evidence before the ALJ, Cotton v. Sullivan, 2 F.3d 692, 696 (6th Cir. 1993), regardless if the ALJ actually cited to the evidence. Walker v. Sec'y of HHS, 884 F.2d 241, 245 (6th Cir. 1989). Nonetheless, there is no requirement that the reviewing court discuss all evidence in the record. Kornecky v. Comm'r of Soc. Sec., 167 F. App'x. 496, 508 (6th Cir. 2006). Essentially, the court's role is limited to search for substantial evidence that is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007).

## V. ANALYSIS

### 1.

The Commissioner objects to the MJ's finding that an expert opinion is required at step three to determine whether Maynard's impairments met or equaled a listed impairment.

The MJ cited to multiple cases for the position that a medical opinion is necessary on the issue of equivalence. Stratton v. Astrue, ___ F. Supp. 2d ___, 2012 WL 1852084 (D. N.H. 2012); Barnett v. Barnhart, 381 F.3d 664, 670 (7th Cir. 2004); Retka v. Comm'r of Soc. Sec., No. 93-40494, 1995 WL 697215 (6th Cir. Nov. 22, 1995); Modjewski v. Astrue, No. 11-C-8, 2011 WL 4841091 (E.D. Wis. Oct. 12, 2011).

In Stratton, the court recognized that SSR 96-6p provides that "*longstanding policy requires that the judgment of a physician* . . . designated by the Commissioner on the *issue of equivalence on the evidence before the* administrative law judge . . . must be received

into *the record as expert opinion evidence and given appropriate weight.*" 2012 WL 1852084 at *11 (quoting Social Security Ruling 96-6p, 1996 WL 374180, at *3 (July 2, 1996) (emphasis in original)).

The Commissioner relies on Gallagher v. Comm'r of Soc. Sec., No. 10-cv-12498, 2011 WL 3841632 (E.D. Mich. March 29, 2011) and Timm v. Comm'r of Soc. Sec., No. 10-cv-10594, 2011 WL 846059 (E.D. Mich. Feb. 14, 2011). Those cases held that an ALJ was not required to obtain medical evidence on the issue of equivalency in cases using the SDM model. The MJ rejected those cases as unpersuasive and the Court agrees:

> [] Timm and Gallagher do not address: (1) the fact that SDM opinion evidence is not considered an acceptable medical source; and (2) the memorandum issued by Acting Chief Administrative Law Judge on September 14, 2010 (10-1691), which mandates the following in SDM cases:
> Agency policy is that findings made by SDMs are not opinion evidence that Administrative Law Judges (ALJs) or Attorney Adjudicator (AAs) should consider and address in their decisions. See, for example, POMS DI 24510.050C, which states that SDM-completed forms are not opinion evidence at the appeal levels. SDM finding, are not "medical opinion" evidence since they do not come from medical sources. However, agency policy is that they are also not the opinions of non-medical sources as described in SSR 06-3p.
> Therefore, ALJs and AAs must not consider SDM RFC assessment forms and other findings as opinion evidence and must not evaluate them in their decisions. ALJs and, by extension, AAs must continue to consider findings made by State agency MCs and PCs as opinion evidence and weigh that evidence together with the other evidence in the record when they make their decisions. 20 CFR 404.1527(f) and 416.927(f) and Social Security Ruling 96-6p.

(Doc. 16, p.22 n.3).

11

Although the Commissioner is correct that the SDM model was tested in Michigan as a way to streamline cases, he is incorrect that SSR 96-6p is abrogated by the SDM model. The SDM model is used when "having a single decisionmaker make the *initial determination* [of disability] with assistance from medical consultants, where appropriate. . . ." 20 C.F.R. § 404.906 (emphasis added). The initial determination comes before a claimant requests a hearing with an ALJ. "The 'single decisionmaker model' was an experimental modification of the disability determination process that happens to have been used in Michigan. This experiment eliminated the reconsideration level of review and allowed claims to go straight from initial denial to ALJ hearing." Leverette v. Comm'r of Soc. Sec., No. 10-10795, 2011 WL 4062380, at *2 (E.D. Mich. Aug. 17, 2011) (citing 20 C.F.R. 404.906(b)(2), 416.1406(b)(2)). However, once a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence. The Commissioner's attempt to expand the purposes of the SDM model beyond the initial determination of disability and through proceedings before the ALJ is unpersuasive.

**2.**

Although the Court is satisfied that a medical opinion is necessary on the issue of equivalence, it need not reach this point to resolve the instant dispute. At Step Three of the five-step process for analyzing disability claims, the ALJ stated that he "has considered the state agency medical opinions." He further relied on the RFC and expressly adopted it as a state agency medical opinion. However, the RFC did not constitute a state agency medical opinion; rather, it was the opinion of non-physician single decisionmaker Beukema. Accordingly, there was no state agency medical opinion on which the ALJ could have relied.

In a similar case, the court remanded to the ALJ for erroneously relying on a single decisionmaker believing her to be a physician. Dorrough v. Comm'r of Soc. Sec., No. 11-12447, 2012 WL 4513621, at *1 (E.D. Mich. Oct. 2, 2012). In Dorrough, the court reasoned that,

> the ALJ here did not find that the opinion of a medical expert was unnecessary to the resolution of the issue of medical equivalence– to the contrary, the ALJ stated that his determination on this issue was *"supported by"* such medical opinions. As Plaintiff observes in her response to Defendant's objections, this case is similar in this respect to Hensley v. Comm'r of Soc. Sec., No. 10-11960, 2011 WL 4407458, at *9 (E.D. Mich. Aug. 23, 2011) (report and recommendation adopted by 2011 WL 4406359 (E.D. Mich. Sept. 22, 2011)), in which the ALJ erroneously believed that a non-physician single decisionmaker was in fact a physician, and then proceeded to rely on the opinion of this individual as though she were a physician. The court in Hensley found that this was not harmless error, but instead warranted a remand, Hensley, 2011 WL 4406359, at *1, and this Court concludes that the same relief is appropriate here.

Id. at *2 (internal citations to record omitted). The court went on to state that the initial determination of medical equivalence rests with the ALJ, "and the decision of the ALJ here evidently reflects his view that medical opinions were needed to resolve this issue." Id.; see also Hensley, 2011 WL 4407458, at *9.

Like Dorrough and Hensley, the MJ was correct in concluding that the ALJ erroneously relied on Beukema's opinion as a state agency medical opinion. The ALJ stated that state agency medical opinions were not binding but "*must* be considered and addressed." Thus, this case is no different than Dorrough and Hensley. The ALJ characterized Beukema's opinion as a state agency medical opinion. He then stated that he was required to consider and address such opinions. He further compared the opinions

13

of Maynard's treating physicians to the RFC that he expressly "adopted." Thus, the Commissioner's argument that the ALJ's error was harmless because he acknowledged that he was not bound by Beukema's opinion is unpersuasive. Whether the ALJ was bound by Buekema's opinion does not remedy his erroneous reliance on Buekema's opinion as a state agency medical opinion.

## VI. CONCLUSION

For the reasons above, including the reasons stated in the MJRR, the Commissioner's motion for summary judgment (Doc. 15) is DENIED and Maynard's motion for summary judgment (Doc. 10) is GRANTED. The MJRR is ADOPTED by the Court and this case is REMANDED for further administrative proceedings.

SO ORDERED.

       s/Avern Cohn  
       AVERN COHN  
       UNITED STATES DISTRICT JUDGE

Dated: November 9, 2012

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, November 9, 2012, by electronic and/or ordinary mail.

       s/Julie Owens  
       Case Manager, (313) 234-5160